IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ANGELA WALLACE,                    }
                                   }
        Plaintiff,                 }
                                   }    CIVIL ACTION NO.
v.                                 }
                                   }    4:15-cv-785-WMA
CAROLYN W. COLVIN, Acting          }
Commissioner of Social             }
Security Administration,           }
                                   }
        Defendant.                 }

## MEMORANDUM OPINION

Plaintiff Angela Wallace brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision denying her applications for supplemental security income and disability insurance benefits. Wallace timely pursued and exhausted the administrative remedies available to her before the Social Security Administration. Based on the court's review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision is due to be affirmed.

### STATUTORY AND REGULATORY FRAMEWORK

To qualify for social security benefits, a non-elderly claimant must, *inter alia*, show that she is disabled. 42 U.S.C. §§ 423(a)(1)(D), 1381a (2012). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2012). To determine if a claimant is disabled, the Social Security Administration employs a five-step process, which is followed at each level of administrative review. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). A conclusive finding may be made at each step; if not, the Commissioner's review continues to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, the Commissioner must determine whether the claimant has "a severe medically determinable physical or mental impairment" expected to result in death or to last at least one year. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the Commissioner must determine if any of the claimant's impairments meets or exceeds the requirements of an impairment within the Listing of Impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the Commissioner has not made a conclusive determination after the third step, she must assess the claimant's Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(a)(4),

2

416.920(a)(4). The RFC measures the claimant's ability to work in spite of her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Fourth, the Commissioner must determine if the claimant's RFC allows her to perform her past relevant work. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the Commissioner must determine whether there exist a significant number of jobs in the national economy that the claimant's RFC allows her to perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920 (a)(4)(v), 416.960(c). If a significant number of such jobs exist, the claimant is not disabled; if not, she is disabled. *Id.*

## FACTUAL BACKGROUND

Wallace applied for disability insurance benefits and supplemental security income on November 8, 2011. (R. at 176-77). She alleges that she became disabled on October 31, 2009. (R. at 176). Wallace testified that she is unable to work primarily due to fibromyalgia (causing pain in her neck, shoulders, hips, feet, hands, and elbows), herniated discs in her neck (causing hand numbness and neck pain), anxiety, and depression. (R. at 46, 61).

Wallace testified that these impairments cause her severe physical and mental difficulties. According to Wallace, she remains in bed 15-20 days per month, and the other days she does little more than sit in a recliner while occasionally watching television

or smoking. (R. at 66-67, 74). Wallace attributes these limitations primarily to her depression. (R. at 67). She testified that she is in constant pain, which she rated at 8 or 9 on a 0 to 10 scale, primarily due to fibromyalgia. (R. at 61-63). When treated by medication, she rated the pain at 6. (R. at 63). She testified that she can dress herself, shower, make the bed, do laundry, use a computer for short periods, drive, shop, lift and carry small objects, and stand or walk for short periods, but she has difficulty walking for extended periods, cooking, washing dishes, vacuuming, thoroughly cleaning the house, using a computer for extended periods, and doing yard work. (R. at 55, 63-65, 71). Wallace previously indicated in her Adult Function Report that she can brush her teeth; brush her hair; daily prepare sandwiches, salads, and microwavable foods; sweep, vacuum, and dust weekly; drive; grocery shop weekly, for about an hour; and handle money. (R. at 226-30). Wallace smokes cigarettes, consuming a pack of cigarettes in about three days. (R. at 55). She sleeps with splints on her hands to alleviate her issues with hand numbness. (R. at 47-48). She underwent neck surgery in 2012 because of the herniated discs in her neck. (R. at 451).

Wallace testified that she has been diagnosed with bipolar anxiety disorder and depression. (R. at 48). While she has never received inpatient psychiatric care, from the record it appears that she has twice seen a psychiatrist, once before and once after

4

the ALJ hearing. (R. at 57). That psychiatrist submitted a note stating that Wallace will need to be in outpatient counseling. (R. at 453). She had previously seen her primary care doctor, Dr. Jotani, for her mental issues, and he treated her by prescribing Prozac and Xanax. (R. at 56-57, 431). Before the hearing, Dr. Jotani opined that he believed Wallace suffers from "significant psychological problems which keep her physically and emotionally from doing her job." (R. at 272). Wallace claims to have gained 100 pounds in the six months leading up to the hearing, primarily because of her depression and medication. (R. at 49). She also claims to have a greatly diminished social life because of the effect of her impairments on her demeanor. (R. at 54, 231).

Wallace testified to having an extreme panic attack that caused her to lose control of her vehicle. (R. at 51-52). She also testified that she was hospitalized for a mental breakdown, which led to termination from her last employment as a manager at a golf club. According to Wallace, her employer told her that she could not return to work until she recovered, but she never did. (R. at 69). She decided not to seek any more work because of her physical pain and depression. (R. at 70). The record contains evidence of two hospitalizations for mental issues, one in June 2009 that the ALJ characterized as an allergic reaction to medication (R. at 318), and one in August 2009 in which Wallace presented with chest pain and severe anxiety (R. at 326-27). In the second visit,

records show that THC (marijuana) was indicated. (R. at 326).

After the hearing, the ALJ found that Wallace was not disabled. (R. at 19). He began by conceding that Wallace had not engaged in substantial gainful activity since the onset date and that she suffered from the following severe impairments: fibromyalgia, osteoarthritis, possible mild carpal tunnel syndrome, herniated disc, anxiety, and depression, though none of the impairments met or exceeded a listing. (R. at 21-22). The ALJ next determined Wallace's RFC, which he listed as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can occasionally push and pull with her upper and lower extremities bilaterally. She can occasionally bend, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. She can frequently handle, finger and feel. She should avoid concentrated exposure to cold, heat, wetness, humidity, vibrations, noise, fumes, odors, dust and gas. She should avoid all exposure to unprotected heights, dangerous machinery, and uneven surfaces. She is restricted to unskilled, low stress work. She can have occasional interaction with the general public, supervisors and co-workers.

(R. at 24). To the extent Wallace's testimony contradicted this finding, the ALJ found the testimony not credible for the varied reasons discussed below. (R. at 26-31).

Based on the RFC finding, the ALJ found that Wallace was unable to perform any past relevant work but that jobs existed in significant numbers in the national economy that she could perform. (R. at 31-32). The ALJ based these determinations on the testimony of the vocational expert, who testified that a hypothetical person

in Wallace's position with the RFC described above could find and perform occupations such as Assembler-Electrical, Marker, and Solderer. (R. at 32-33). The VE testified that a hypothetical person with limitations similar to those testified to by Wallace would be precluded from all work. (R. at 83-85). Finding the first hypothetical to better correspond to the previously determined RFC, the ALJ found Wallace not to be disabled. (R. at 33). Wallace appealed the ALJ's decision, but the Appeals Council denied review. (R. at 1).

## DISCUSSION

### A. Standard of Review

"[R]eview of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Review of the Commissioner's factual findings is highly deferential; "[i]f the Commissioner's decision is supported by substantial evidence [the court] must affirm, even if proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.3d 1233, 1239 (11th

Cir. 1983). "A 'substantial evidence' standard, however, does not permit a court to uphold the [Commissioner's] decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards, are not presumed valid." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Such conclusions of law are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "The [Commissioner's] failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529.

## B. Substantial Evidence Supports the Commissioner's Decision

Wallace does not challenge any legal standards applied by the ALJ or the decision of the Appeals Council to deny review. Instead, she only contends that the ALJ's decision that she is not disabled is not supported by substantial evidence. Specifically, Wallace argues that (1) the ALJ improperly discounted her treating physician's letter, in which he opined that Wallace's mental

impairments preclude her from working and (2) the VE's testimony shows that she is unable to perform any jobs.[1] Wallace's challenge implicates only two steps of the ALJ's analysis: the ALJ's RFC finding and his conclusion that jobs exist that Wallace could perform. The court finds that the ALJ's decision is supported by substantial evidence.

**1. The ALJ's RFC Finding is Supported by Substantial Evidence**

In making his RFC finding, the ALJ considered all the evidence in the record, including Wallace's testimony and previous submissions, medical records, evaluations of Wallace by various physicians, and statements made by her physicians and former employer. Wallace testified to limitations much more severe than those found by the ALJ, but the ALJ rejected much of her testimony concerning her pain and limitations. An ALJ may do this only under what is known as the "pain standard." Eleventh Circuit precedent "requires that an ALJ apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*,

---

[1] In her statement in support of benefits, Wallace also references and attaches a letter from a physician dated September 23, 2015, detailing her current diagnosis. (Doc. 8). The court, however, cannot consider any evidence not first presented to the Commissioner unless it is presented as part of a request for a remand to the Commissioner to allow for consideration of the new evidence, known as a Sentence Six remand under 42 U.S.C. § 405(g). *See Ingram*, 496 F.3d at 1267-68. Because Wallace has not requested a Sentence Six remand, the court will not consider the new evidence.

67 F.3d 1553, 1560 (11th Cir. 1995).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The standard seeks to ensure that objective medical evidence confirms the existence or likelihood of the pain or other subjective symptoms complained of by the plaintiff.

If the plaintiff's testimony satisfies this standard, the ALJ may still discredit the testimony, but he "must articulate explicit and adequate reasons for doing so," *Foote*, 67 F.3d at 1561-62, and "such articulation of reasons by the [ALJ must] be supported by substantial evidence," *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). "Failure to articulate the reasons for discrediting subjective testimony," or a failure to support those reasons by substantial evidence, "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.

In this case, the ALJ found that Wallace's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the requirements of the pain standard. (R. at 26). The ALJ found, however, that Wallace's subjective testimony was not credible for various reasons. The court finds that the ALJ's given reasons were explicit, adequate,

and supported by substantial evidence.

The ALJ began by discussing Wallace's complaints of hand pain. He discounted her relevant testimony because, in his view, (1) Wallace made no persistent complaints of hand pain, (2) very few hand abnormalities are noted in the medical records, and (3) medical evaluations found no deficits and good hand strength and abilities. (R. at 28). The record contains three complaints of hand issues during or around the alleged period of disability. In October and November 2008, Wallace saw a hand specialist and complained of wrist pain and hand numbness. The doctor observed some wrist tenderness but found no abnormalities apart from a small (apparently unrelated) cyst on her finger. Wallace was given injections for the wrist pain and splints to wear while she slept to address the numbness. (R. at 446-48). In November 2009, Wallace complained of swollen hands. (R. at 364). In May 2010, she again complained of hand pain, but once again no abnormalities were identified. (R. at 338). In January 2012, during the course of her disability examination, the examining physician noted no abnormal swelling or limitation of motion, strong handgrip, and abilities to make a fist, oppose the thumb to the fingers, button, tie shoelaces, pick up small objects, hold a glass, and turn a doorknob. (R. at 428-29).

The court finds that each of the ALJ's reasons for discrediting Wallace's testimony of hand pain is supported by

11

substantial evidence. While Wallace complained three times of hand pain during or shortly before the alleged disability period, this number pales in comparison to the persistence of complaints of neck, shoulder, and back pain, and the ALJ aptly noted this discrepancy. The ALJ is also correct that the medical records show no significant abnormalities or limitations, and the disability evaluation, in finding several hand abilities and no abnormalities or limitations, supports this conclusion. While Wallace saw a hand specialist in 2008, this occurred before the alleged onset date, and no subsequent complaints of hand numbness are present in the record.[2]

The ALJ next discounted Wallace's testimony regarding her pain due to fibromyalgia and herniated discs because the medical records contain no evidence of significant limitations. (R. at 28). Unlike Wallace's hand pain, the ALJ did not note any lack of pain complaints; such a contention would be unsupportable because of Wallace's frequent complaints of severe pain in her neck, shoulders, back, and joints. Instead, the ALJ focused on the strong evaluation of Wallace by the examining physician. That physician's report noted a normal range of motion; a lack of joint deformity; no joint or back impairment; normal gait, reflexes, and sensation;

---

[2]The ALJ later found that her testimony of hand numbness impeaches her credibility generally, for the same reasons as stated above. This finding is also supported by substantial evidence.

abilities to squat and rise; and good muscle strength. (R. at 428-29). The physician noted pain trigger points in Wallace's upper back, neck, and shoulders. (R. at 429). Wallace also testified to an ability to bend at the waist and touch her toes. (R. at 72).

The ALJ also discounted Wallace's fibromyalgia and herniated disc pain complaints because of a lack of aggressive treatment pursued by Wallace. He noted that Wallace had not sought treatment from a rheumatologist for her fibromyalgia or from any other specialist, save for a neck surgery in 2012. The ALJ also found that several of her medications were prescribed at relatively low doses, in comparison with usual doses listed in *The Pill Book*. (R. at 28). The ALJ did not note Wallace's treatment by a hand specialist in 2008. (R. at 446-48). This treatment, however, was prior to the alleged onset date. While Wallace may have had reasons for not seeking more specialist help, such as issues with insurance or ability to pay, and while the medication and dosages listed by the ALJ may not be fully indicative of Wallace's overall treatment, the ALJ's reliance on this evidence is not unreasonable or inadequate to support Wallace's lack of credibility. Substantial evidence therefore supports the ALJ's discrediting of Wallace's testimony regarding her fibromyalgia and herniated disc pain.

The ALJ then shifted to Wallace's mental limitations, finding them to be less severe than alleged because of her limited mental health treatment and her strong psychological evaluation. He first

13

noted that she received no inpatient mental treatment and had no psychiatric hospitalizations. Wallace was twice hospitalized in 2009 and complained of mental issues, but the ALJ discounted both of these visits. During the first visit, in June 2009, she was admitted for "an episode of altered mental status." (R. at 318). She complained of nausea and dizziness after taking a pill given to her by a friend. (R. at 319). She was discharged, and later records indicate an allergy to Adipex-P, the medication she took. (R. at 369). The ALJ characterized her altered mental status as an allergic reaction, not as true psychiatric symptoms (R. at 29), and that characterization is supported by substantial evidence. In August 2009, Wallace was again hospitalized, complaining of chest pain and anxiety. The doctor diagnosed chest pain, muscle spasms, and anxiety. THC (marijuana) was detected in her system. (R. at 326-27). The ALJ again did not consider this a true psychiatric hospitalization, and, given that the only evidence of mental issues in the medical records is that Wallace was anxious, that finding is supported by substantial evidence.

Wallace's psychiatric symptoms were treated almost exclusively by her primary care physician. She testified that she had seen a psychiatrist once, three weeks prior to the disability hearing, and that she had a second visit scheduled for the day after the hearing. (R. at 57). The ALJ noted that no records of the second visit were submitted, even though the administrative record was

held open for those records. (R. at 29). A psychiatrist did, however, later submit a note stating that Wallace will need to be in counseling to help with her psychiatric care. (R. at 453). The court finds that the lack of regular psychiatric care supports the ALJ's finding.

The ALJ also highlighted Wallace's strong psychological evaluation, conducted by an examining physician in connection with the Disability Determination Service. Apart from her apparent physical pain, the examining doctor noted very few deficiencies. He stated that she was neatly dressed and groomed, polite, responsive, and well-oriented. Her verbal responses were normal, as were her attention, concentration, and memory. Her abstract thinking, fund of general information, computational skills, and vocabulary "were reflective of an individual with average intelligence and a high school education." After a detailed description of Wallace and her visit, he assigned her a Global Assessment of Functioning score of 60, representing "Moderate Symptoms Affecting Personal, Social, and Occupational Functioning." (R. at 431-33). The ALJ properly relied on this report in reaching and supporting his RFC finding, discounting Wallace's testimony of more severe limitations.

The ALJ then discussed several reasons that he found Wallace's credibility to be lessened by inconsistencies in the record. (R. at 30). First, Wallace testified at the hearing on July 29, 2013, that

she weighed 240 pounds but normally weighed 140-160 pounds. According to Wallace, she gained 100 pounds in the six months prior to the hearing, and she attributed the weight gain to her medication and depression. (R. at 49). The ALJ found this statement to lessen her credibility because her driver's license, issued six months prior, showed her weight as 185 pounds, not between 140 and 160, and her last physical examination by her family doctor, in August 2011, also listed her weight as 185 pounds. The ALJ noted that records show Wallace's weight to have previously reached 240 pounds in 2009 and 2010. (R. at 30).

The court finds that multiple conclusions could be drawn from the evidence of Wallace's weight, but because the ALJ's conclusion is one such permissible conclusion, it is supported by substantial evidence. The records show that Wallace weighed around 210 pounds from September 2008 until July 2009. (R. at 367-80). She weighed around 240 pounds from November 2009 until June 2010 (R. at 357-63), when her weight began to steadily drop until she weighed 170 pounds in January 2012. (R. at 346, 351, 427). In January 2013, her driver's license listed her weight as 185 pounds. (R. at 30). The evidence does not necessarily discredit her testimony that she gained 100 pounds in the six months prior to the hearing, since no medical records from that time period are present in the administrative record. But the driver's license from the beginning of that time period lists her weight as 185 pounds, and the record

plainly establishes that she did not routinely weigh 140 to 160 pounds. The ALJ's conclusion is therefore supported by substantial evidence.

Next, the ALJ found Wallace's testimony of her severe limitations inconsistent with the record. Wallace testified that 15-20 days per month she does not get out of bed, and the other days she does little more than sit in a recliner while occasionally watching television or smoking. (R. at 66-67, 74). She testified that she cannot vacuum the house and is hardly able to clean. (R. at 65). The ALJ found that testimony inconsistent with Wallace's previous statements. Wallace indicated in her Adult Function Report that she is able to brush her teeth; brush her hair; daily prepare sandwiches, salads, and microwavable foods; sweep, vacuum, and dust weekly; drive; grocery shop weekly, for about an hour; and handle money. (R. at 226-30). While it is possible that her conditions deteriorated between the time she completed the Adult Function Report and the ALJ hearing, the ALJ's finding of weakened credibility is supported by substantial evidence.

Finally, the ALJ noted that Wallace testified to side effects of her medication, namely dry mouth, constipation, fluid build-up, and moments of unawareness and forgetfulness, but the ALJ found no persistent complaints of those side effects in the record. (R. at 31). The court notes three complaints of fluid build-up (R. at 358, 362, 364) and four complaints of constipation (R. at 368, 372, 374,

17

390) in Wallace's medical records, as well as a note in her Adult Function Report that she sometimes forgets appointments (R. at 230). The court finds this particular conclusion to be unsupported by substantial evidence, but this lack of support is harmless given the properly supported credibility concerns articulated by the ALJ.

Next, the ALJ largely discounted the opinion of Dr. Jotani, Wallace's primary care physician, who stated in a submitted letter: "Angela Wallace has significant psychological problems which keep her physically and emotionally from doing her job." (R. at 272). The ALJ give Dr. Jotani's opinion little weight because (1) the opinion relates to the ultimate issue of the case, a determination reserved solely to the Commissioner; (2) Dr. Jotani is Wallace's family doctor, not a psychologist or psychiatrist; and (3) Wallace's psychiatrist opined that Wallace would benefit from counseling, not that she is unable to work. (R. at 31). Wallace argues that the ALJ's discounting of the letter was improper.

"[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1446, 1440 (11th Cir. 1997). *Inter alia*, good cause may be shown when the doctor's opinion is conclusory or "the evidence supports a contrary finding." *Id.* A treating physician's opinion that a claimant is unable to work is not a medical opinion, but rather an opinion on an issue reserved to the Commissioner, and is not owed deference.

20 C.F.R. § 404.1527(d)(1); *see also Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007). The court should "not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015). The ALJ's discounting of Dr. Jotani's letter was proper. The opinion relates to an issue reserved to the Commissioner, is conclusory, and is more restrictive than that of Wallace's psychiatrist. The ALJ therefore had good cause to discount Dr. Jotani's opinion.

Finally, the ALJ accorded significant weight to the Mental RFC Assessment, which supported his RFC finding, and some consideration to the letter submitted by Wallace's former employer, who stated that Wallace could not perform her duties, particularly dealing with the public, because of her health, and her continued issues have precluded re-employment. (R. at 267). The ALJ considered this opinion but noted that her former work was a skilled, management position that involved dealing with the public, and the RFC finding as stated would preclude such work.

Based on the totality of the evidence, the ALJ found that Wallace was able to perform light work with the limitations described above. Even though those limitations were less severe than those testified to by Wallace, for the reasons stated above, both the ALJ's decision to partially discredit Wallace's testimony

19

and his RFC finding are supported by substantial evidence.

**2. The ALJ's Other Work Finding is Supported by Substantial Evidence**

Based on this RFC determination, the ALJ found that jobs exist in significant numbers in the national economy that Wallace could perform. (R. at 32). The ALJ relied on testimony from the VE in making this finding. The VE first testified that a claimant of Wallace's age, education, and work experience and the exact RFC described above would be able to find and perform three different types of jobs. (R. at 81-83). The VE then testified that a claimant of Wallace's age, education, and work experience with many other restrictions--the claimant could only stand or walk uninterrupted for 20 minutes or sit uninterrupted for 30 minutes, would need to be able to sit or stand at will and to elevate her legs at will, would need five unscheduled breaks per eight-hour shift, and would likely have 15 unplanned absences in a 30-day period--could perform no work and would thus be disabled. (R. at 83-85).

Wallace argues that, based on the second hypothetical, she must be found disabled because she suffers from all of those limitations. In making the RFC finding, however, the ALJ found that Wallace's limitations actually correspond to the first hypothetical, not the second, and, as stated above, that RFC finding is supported by substantial evidence and will not be disturbed. Wallace's ability to work, therefore, should be

evaluated under the VE's first hypothetical. Wallace does not challenge the propriety of the VE's answer to that hypothetical; she only argues that it is inapplicable to her. Because the first hypothetical is applicable to Wallace, the ALJ's determination that other jobs exist that Wallace could perform is supported by substantial evidence. Wallace, therefore, is not disabled.

**CONCLUSION**

Because the ALJ's determination that Wallace is not disabled is supported by substantial evidence, and because the ALJ applied proper legal standards, the Commissioner's final decision is due to be affirmed. A separate order will be entered.

DONE this 25th day of January, 2016.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE